634,Kennedys CMK LLP.
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
(908) 605-2916
John.orzel@kennedyslaw.com

*Attorneys for Plaintiff*
SAVINO DEL BENE U.S.A., INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SAVINO DEL BENE U.S.A., INC.,**<br>*Plaintiff*<br><br>-   **Against**<br><br>**SAMSARA SURFACES LLC;**<br>**SUNDERLANDS, A SAMSARA ENTITY;**<br>**MINERACAO MARIANELLI LTDA;**<br>**MG2 MARMORES e GRANITOS;**<br>**GRAMAZINI GRANITOS e**<br>**MARMORES THOMAZINI LTDA;**<br>**GRANITOS S/A; NISSI ROCHAS COM.**<br>**E REP. LTDA; GRANIBRAS ES**<br>**GRANITOS E MARMORES LTDS and**<br>**BADAN BUILDING MATERIALS**<br>**CORPORATION,**<br>*Defendants.* | **COMPLAINT** |

Plaintiff, SAVINO DEL BENE U.S.A., INC., (hereinafter "Savino"), by its attorneys,

Kennedys CMK LLP, as and for its Complaint against Defendants SAMSARA SURFACES LLC;

SUNDERLANDS, a SAMSARA SURFACES ENTITY (Samsara and Sunderlands, a Samsara

Surfaces Entity shall be referred hereinafter jointly as "Samsara"); MINERACAO MARIANELLI

LTDA (hereinafter "Marianelli"; MG2 MARMORES e GRANITOS (hereinafter "MG2");

GRAMAZINI GRANITOS e MARMORES THOMAZINI LTDA (hereinafter "Gramazini");

GRANITOS S/A (hereinafter "Granitos"); NISSI ROCHAS COM. E REP. LTDA (hereinafter

1

"Nissi"); GRANIBRAS ES GRANITOS E MARMORES LTDS (hereinafter "Granibras") and BADAN BUILDING MATERIALS CORPORATION (hereinafter "Badan"), alleges upon information and belief that:

1.  This is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §1333.

2.  This Honorable Court has an alternative and/or additional basis for jurisdiction over any purely state causes of action involved in this matter under the Court's supplemental jurisdiction codified at 28 U.S.C. §1367 as all claims alleged herein are related so as to form part of the same case and all involved parties are the same.

3.  Venue is proper as to Samsara because Samsara and Plaintiff had entered into an agreement, Customer Credit Application and Shipping Agreement Terms & Conditions (hereinafter "Credit Application") on June 23, 2020, which provided that the sole and exclusive venue for the resolution of disputes shall be the United States District Court for the Southern District of New York, sitting in the Borough of Manhattan. [Copy of Credit Application annexed as **Exhibit A**].

4.  Venue is proper as to the remaining Defendants based upon said Defendants regularly and systematically  conducting business with persons and entities located within the United States of America and specifically with Plaintiff, a New York corporation.

5.  Pursuant to the Credit Application (Exhibit A), Samsara unconditionally submitted to the personal jurisdiction of this Court and further waived any objection as to lack of personal jurisdiction:

> Choice of Law and Jurisdiction:   The parties hereby agree that this
> Agreement is made in, governed by, to be performed in, and shall be
> construed according to the laws of the State of New York, without reference
> to the conflicts of laws principals of said law.  The parties consent to and

submit to the sole and exclusive jurisdiction of the United States District for the Southern District of New York, sitting in Manhattan, New York and if said court determines that it cannot exercise jurisdiction over any matter on account of lack of subject matter jurisdiction, then the parties consent to and submit to the sole and exclusive jurisdiction of the New York State Supreme Court for New York County.  The parties agree that the aforementioned federal court or alternative state court shall be the sole and exclusive forum in which any action or other proceeding arising out of or in connection with this Agreement shall be brought.  The parties specifically agree to the personal jurisdiction of said court(s), agree to appear in said court(s) and waive any and all objections with regard to a lack of jurisdiction of said court(s).

6.  At all times hereinafter mentioned, Plaintiff, Savino was and still is a corporation organized and existing pursuant to the laws of the State of New York, with an office and place of business located at 34 Englehard Avenue, Avenel, New Jersey 07001.

7.  Savino is an international logistics provider, regularly acting as a freight forwarder, customs broker and non-vessel operating common carrier ("NVOCC").

8.  Savino is licensed to act as a NVOCC and international freight forwarder by the Federal Maritime Commission (FMC).

9.  Savino regularly engages in the arranging of international transportation of cargo by sea for or on behalf of its customers, including Defendants.

10. Upon information and belief, Defendant, Samsara was and still is a limited liability company organized and existing pursuant to the laws of the State of Georgia, which was and still is engaged in the importation and sale of finished and unfinished stone products within and without the United States of America, with an office and place of business located at 9700 J Street, Omaha, Nebraska 68108.

11. According to the public information able to be viewed on the website of the Georgia Secretary of State's Corporation Division, Samsara identifies an agent for the service of process as being Alok Jaiswal, 5131 Gillionville Road, Albany, Georgia 31721.

12. Upon information and belief, Defendant Sunderlands, a Samsara Surfaces Entity, is a trade name of Defendant Samsara or alternatively is a separate limited liability business entity organized and existing pursuant to the laws of one of the United States, with an office and place of business located at 9700 J Street, Omaha, Nebraska 68108 and was at the time of the shipments involved in this action was an importer and seller of stone products and did appear as consignee on a number of House Bills of Lading issued by Savino and did receive delivery of cargo carried under said House Bills of Lading.

13. Upon information and belief, Defendant MINERACAO MARIANELLI  LTDA is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on the international market, including to buyers in the United States, with an office and place of business located at Av. Getúlio Vargas, 500 - Store 16 - 1st Floor Center. Colatina/ES. CEP.: 29700-010.

14. Upon information and belief, Defendant MG2 MARMORES e GRANITOS is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on the international market, including to buyers in the United States, with an office and place of business located at Cachoeiro X Castelo Highway, S/N Conduru, Cachoeiro de Itapemirim – ES.

15. Upon information and belief, Defendant Gramazini Granitos e Mármores Thomazini LTDA is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on the international market, including to buyers in the

United States, with an office and place of business located at R. Mario Rezende, 27 - Gilberto Machado, Cachoeiro de Itapemirim - ES, 29303-200, Brazil.

16.     Upon information and belief, Defendant GRANITOS S/A, is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on the international market, including to buyers in the United States, which has an office and place of business located at CNPJ: 23.445.513/0001-01 Rod Quarto Anel Viario S/N KM 20 – BR 222, CEP: 61600-000 Caucaia – Ceara – Brazil.

17. Upon information and belief, Defendant NISSI ROCHAS COM. E REP LTDA is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on international markets, including to buyers in the United States, with an office and place of business located at Fazenda Lagoana Sul, S/N – Zona Rural, Tapia – Santa Quiteria – CE – Brasil, CNJP: 22.330.577/0002-85.

18. Upon information and belief, Defendant GRANIBRAS ES GRANITOS E MARMORES LTDA., is a limited liability business entity organized and existing pursuant to the laws of Brazil, which was at the time of the shipments at issue and is still operating stone quarries and sells stone products from locations throughout Brazil on international markets, including to buyers in the United States, with an office and place of business located at ROD BR 259 – Vila Maria Ortiz, CEP: 29712020 – Colatina – ES, 29712-020 Brazil 09.225.888/0001 – 35.

19. Upon information and belief, Defendant BADAN BUILDING MATERIALS CORPORATION is a limited liability business entity organized and existing pursuant to the laws of the Philippines, which was at the time of the shipments at issue and is still operating stone

quarries and sells stone products from locations throughout the Philippines on the international market, including to buyers in the United States, with an office and place of business located at Alviera Industrial Park Phase 1, Lot 18 and 19, Porac, Pampanga, Philippines.

*Savino's House Ocean Bill of Lading*

20. Savino acted as a freight forwarder, NVOCC, and/or customs broker on behalf of Defendants.

21. As an NVOCC, Savino acted as an intermediary to arrange the transportation of Defendants' cargo in shipper-loaded and sealed shipping containers, via ocean container vessels, operated by other parties, as a common carrier in the foreign commerce of the United States.

22. Acting as a NVOCC, Savino entered into House Bill of Lading contracts with the shippers noted on the House Bill of Lading form and with the named consignee on the House Bill of Lading contracts, that were issued at the time of shipment.

23.     Annexed hereto as **Exhibit B** is a list prepared by Savino showing the shipments involved in this lawsuit, showing the named shippers and the named consignees, as well as the House Bill of Lading numbers for which Savino arranged carriage, that had been successfully delivered to the named consignee.  [In order to limit the size of the Complaint document filed with the Court, Savino has not included copies of each of the House Bill of Lading contracts for the delivered shipments.  Copies will be provided to Defendants as part of Savino's initial disclosure.]

24. Defendant, Samsara and/or "Sunderlands – a Samsara entity," appears as the named consignee on each of the House Bill of Lading contracts that governed the shipments in suit that were successfully completed.

25. Savino issued "House" Bill of Lading contracts for ten (10) shipments out of the total number of shipments that are at issue in this case, which were not delivered to the named

consignee, showing Defendants: MINERACAO MARIANELLI LTDA; MG2 MARMORES e

GRANITOS; GRAMAZINI GRANITOS e MARMORES THOMAZINI LTDA; GRANITOS

S/A; NISSI ROCHAS COM. E REP. LTDA; GRANIBRAS ES GRANITOS E MARMORES

LTDS and BADAN BUILDING MATERIALS CORPORATION as the "shipper" and showing

Defendant  SAMSARA or "Sunderlands – A Samsara Surfaces Entity," as the "consignee."

[Annexed as **Exhibit C** are copies of the ten (10) House Bill of Lading contracts issued by Savino

for the shipments in suit that were not successfully delivered to the named consignee.  The shippers

named on the attached ten (10) bills of lading shall be referred to collectively as the "Foreign

Shippers."]

26. The standard Terms and Conditions applicable to Savino's House Bill of Lading appear on

the back of each physical bill of lading issued by Savino.  (See Exhibit C for a specimen of the

terms and conditions that are applicable to each shipment for which a House Bill of Lading is

issued.).

27. The standard Terms and Conditions applicable to the Savino House Bill of Lading are also

available upon request made to Savino, are available on the website maintained by Savino at

https://www.savinodelbene.com/services/ocean-freight/  and are available as part of the tariff that

Savino is required to publish and make available to the public by the regulations promulgated by

the  Federal  Maritime  Commission  (FMC)  in  Savino's  tariff  publishing  service

http://rates.descartes.com[1]

28. The Savino House Bill of Lading contains a "Received" clause on the face-page of the

document:

> Received by carrier for shipment by ocean vessel between port of loading
> and port of discharge, and for the arrangement or procurement of pre(Sic)
> pre-carriage from place of receipt and on-carriage to place of delivery, where

---

[1] FMC regulations allow for the charging of a reasonable fee to access a published tariff.

stated above, the goods as specified above in apparent good order and condition unless otherwise stated.  The goods to be delivered at the mentioned port of loading or place of delivery, whichever applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or consignee agrees to accepting this Bill of lading.

29. The definitions section of the "Conditions of Contract" appearing on the reverse of the

physical House Bill of Lading, provide:

> **Freight forwarder**" (herein called **FF**) means Multimodal Transport Operator, Agent of the Carrier, NVOCC who issues this **Bill of Lading (BL** or otherwise nominated) and is named on the face of it and does not assume liability for the performance of the multimodal transport contract as a carrier.
> "**Carrier**" includes the contracting carrier with whom FF stipulates a contract of carriage and all carriers that carry or undertake the goods hereunder or perform any other service incidental to such carriage.
> "**Merchant**" means and includes the Shipper, the Consignor, the Consignee, the Holder of this BL, the Receiver and the Owner of the Goods.
> "**Consignor**" means the person who concludes the multimodal transport contract with the FF. "**Consignee**" means the person entitled to receive the goods from the FF.
> "**Taken in charge**" means that the goods have been handed over to and accepted for carriage by the FF at the place of receipt evidenced in this BL.
> "**Goods**" means any property as well as containers, pallets or similar articles of transport or packaging not supplied by the FF, irrespective of whether such property is to be carried on or under deck.

30. The Savino House Bill of Lading sets-forth the terms under which the House Bill of Lading

is issued at Paragraphs 1 and 2 of the Conditions of Contract:

> **1) Applicability** Notwithstanding the heading "HOUSE BILL OF LADING" (or otherwise nominated) these conditions shall also apply if more than one mode of transport is used.
> **2) Issuance of this BL**
> a) By issuance of this BL, the FF undertakes, in his own name and on behalf of the merchant, to procure through the designated carriers the performance of the entire transport, from the place at which the goods are taken in charge  at place of receipt evidenced in this BL to the place of delivery designated in this BL. The FF assumes liability as set out in these conditions.
> b) Subject to the conditions of this BL, the FF shall be responsible for the acts and omissions of his servants or agents acting within the scope of their

8

employment, or any other person of whose services he makes use for the performance of the contract evidenced by the BL, as if such acts and omissions were his own.

31. A copy of the Savino House Bill of Lading, corresponding to each shipment for which Savino arranged transportation, was provided to each of the Foreign Shippers at the time that the shipments were loaded on board the initial container vessel that would transport the cargo, sealed in a container by or on behalf of the Foreign Shippers.

32. Each of the Foreign Shippers was provided with notice as to where the terms and conditions of the Savino House Bill of Lading could be accessed by the Foreign Shippers, including by requesting a copy or on line by Savino, as part of the standard booking procedures.

33. The Savino House Bill of Lading provides that the shipper, defined as one of the "Merchant" parties, shall be responsible for the payment of all freight (charges for the carriage of cargo by water) and associated charges:

**13) Freight and Charges**

a) Freight shall be paid in cash, without any reduction or deferment on account of any claim, counterclaim or set-off, whether prepaid or payable at destination. Freight shall be considered as earned by the FF at the moment when the goods have been taken in charge, and not to be returned in any event.

b) Freight and all other amounts mentioned in this BL are to be paid in the currency named in this BL or, at the FF's option, in the currency of the country of dispatch or destination at the highest rate of exchange for bankers sight bills current for prepaid freight on the day of dispatch and for freight payable at destination on the day when the Merchant is notified on arrival of the goods there or on the date of withdrawal of the delivery order, whichever rate is higher, or at the option of the FF on the date of this BL.

c) All dues, taxes and charges or other expenses in connection with the goods shall be paid by the Merchant. Where equipment is supplied by the FF, the Merchant shall pay all demurrage, detention and charges which are not due to a fault or neglect of the FF.

d) The Merchant shall reimburse the FF in proportion to the amount of freight for any costs for deviation or delay or any other increase of costs

of whatever nature caused by war, warlike operations, epidemics, strikes, government directions or force majeure.

e) The merchant warrants the correctness of the declaration of contents, insurance, weight, measurements and value of the goods but the FF has the liberty to have the contents inspected and the weight, measurements or value verified. If on such inspection it is found that the declaration is not correct it is agreed that a sum equal either to five times the difference between the correct figure and the freight charged, or to double the correct freight less the freight charged, whichever sum is the smaller, shall be payable as liquidated damages to the FF for his inspection costs and losses of freight on other goods notwithstanding any other sum having been stated on this BL as freight payable.

f) Despite the acceptance by the FF of instructions to collect freight, charges or other expenses from any other person in respect of the transport under this BL, the Merchant shall remain responsible for such monies on receipt of evidence of demand and the absence of payment for whatever reason.

34. When acting as a NVOCC, Savino does not physically take charge of the cargo being transported, unless Savino agrees to act as a warehouse for the cargo, before shipment or after delivery of the cargo to the consignee, which is not the case in any of the shipments involved in this matter.

35. Savino arranged for the carriage of the cargo involved in this lawsuit by third-party ocean carriers.

36. Ocean carriers allow a fixed amount of time at the port of discharge or place of delivery of the containers for the container to be picked-up at the port of discharge or place of delivery shown on the bill of lading, be emptied of cargo and to be returned to the place designated by the ocean carrier.  This time is generally known in the industry as "free time."

37. Within the free time period, terminals, where containers are kept pending delivery to the consignee, will allow a fixed amount of time for the container to remain at the terminal before that terminal will assess a charge for the storage of the full containers at the terminal.  This charge will

be assessed in addition to the charges assessed as a result of failure to abide by the free time allowed.

38. Failure to comply with post-discharge free time periods will result in charges being assessed on a daily basis by the terminal and/or carrier.  Such charges are generally described as "demurrage," "detention," "per diem" and/or "storage charges," among other designations.

39. Savino advised Samsara and through Samsara, Samsara's "entity," Sunderlands, about the amount of free time that was allowed in connection with each of the containers consigned to Samsara and/or Sunderlands, a Samsara "entity."

40. The notification to Samsara about the allowed free time was provided when Savino gave Samsara notice that the cargo had been shipped and when the cargo was expected to be available for delivery at the conclusion of the carriage.

41. Given the volume of cargo being imported by Samsara, Savino maintained a continual reporting procedure with Samsara that involved Savino regularly sending Samsara an Excel spreadsheet that showed the cargo that had been delivered, the cargo awaiting delivery and the cargo that was out for delivery.  [Annexed hereto as **Exhibit D** is an example of the spreadsheet report sent by Savino to Samsara]

42. The regular spreadsheet reports sent by Savino to Samsara included information on the amount of post discharge fees that were assessed on each container, which were subsequently invoiced by Savino to Samsara.

43. MINERACAO MARIANELLI LTDA; MG2 MARMORES e GRANITOS; GRAMAZINI GRANITOS e MARMORES THOMAZINI LTDA; GRANITOS S/A; NISSI ROCHAS COM. E REP. LTDA; GRANIBRAS ES GRANITOS E MARMORES LTDS and BADAN BUILDING MATERIALS CORPORATION (hereinafter referred to jointly as "Foreign Shippers") were

advised by Savino of the fact that the cargo that they sent to Samsara had not been picked-up and that they and the cargo would be held liable for the post discharge fees.

44. Samsara was regularly invoiced for the post discharge fees that accrued on the containers for which Savino arranged the transportation, indicating the total amount due on each container.

45. The amounts charged for the post discharge fees assessed on the Samsara cargo were subject to the credit agreement entered into between Samsara and Savino, as a result of which, the cargo for which fees were due was regularly delivered to Samsara without requiring Samsara to effect payment of the charges prior to delivery.

46. The standard terms and conditions of Savino's NVOCC bill of lading provide that Savino shall have a specific lien against cargo for the charges that arise in relation to the transportation of the cargo being transported under the House Bill of Lading, that are in Savino's possession, custody or control.

47. The standard terms and conditions of Savino's NVOCC House Bill of Lading provide that Savino shall have a general lien against any cargo belonging to a Merchant party, as defined in the House Bill of Lading, for any charges owed by a Merchant party.

48. The lien provision contained in the House Bill of Lading states:

**14)  Right of Lien**
In relation to all goods and documents relating to the goods which come into the FF's possession and control, the FF shall have a particular lien and general right of detention upon each of the goods and documents for all amounts owing to the FF whether those amounts incurred to the FF before, during or after the goods or documents came into the FF's possession or control, or relate to other goods or documents. If any amount due to FF is not paid within one calendar month after notice has been given to the party from whom the amount is due that such goods are being detained, the goods and the documents that relate to the goods may be sold at public or private sale without advertising or in such other manner as deemed appropriate by FF with such sale being at the expense of such party that owes the amount to FF. The net proceeds of such sale may be applied in or towards satisfaction of the indebtedness to FF and FF will not be liable for any deficiencies or reduction in value received on the sale of the

goods and the party responsible for the amount owing shall not be relieved from any liability, other than to the extent of the net proceeds realized from the sale, due to the sale of the goods.

49.  In addition to the lien provision contained in the Savino House Bill of Lading, Samsara

agreed to both a specific and a general lien over cargo belonging to Samsara when Samsara agreed

to the Savino Credit Application:

> **Grant of Lien as Security for Unpaid Balances**:  Customer grants a lien in favor of Savino Del Bene U.S.A., Inc., ("SDD") on all goods directed, transported, stored or otherwise handled by Savino Del Bene U.S.A., inc., to the extent of any unpaid invoice balance(s), including but not limited to service charges, additionally accrued storage charges, per diems, demurrage, disposition charges and other fees, regardless of whether the unpaid balance(s) is/are applicable to the particular goods upon which the lien is asserted.  The lien so granted shall be inclusive of but not limited to all rights and remedies as described in the Uniform Commercial Code, Article 7, Sections 209 and 210.

> **Additional Remedies upon Default in Payment:  Overdue balance(s) may result in forfeiture of any current and future credit arrangements between the Parties.  Upon non-payment of any past-due balance(s) as set forth above, Savino Del Bene U.S.A., Inc., may take legal action, Including the Initiation of a suit for collection, against Customer, and that SDB shall be entitled to** recover all collection expenses, including reasonable attorneys fees and all costs incurred in such action. Customer agrees that any goods unclaimed within thirty days of receiving notice of arrival at the location designated for delivery shall be deemed abandoned, and that SDB shall have the right to dispose of abandoned goods in any way consistent with UCC Article 2, Section 706. The proceeds of such sale shall be applied to any unpaid balances due from Customer to SDB, including expenses incurred in such sale.  In the event of any surplus after such application, SOB shall send Notice of same, via certified mail, to Customer at the last known address for Customer, and SDB shall deliver such surplus to Customer at such address as Customer directs, in writing, upon receipt of notice.  Should Customer fail to designate an address for tender of surplus payment for a period of one year following the mailing of the Notice, all remaining funds shall revert to SDB.

*Ocean Carriers' Master Bill of Lading*

50. As a NVOCC, Savino makes arrangements with the operators of the container vessels for the physical carriage of the containers into which the shippers had loaded the cargo and upon which the shipper placed a unique security seal.

51. As a NVOCC, Savino does not view take physical possession of the cargo being shipped at any time during the transportation.

52. Savino enters into ocean bill of lading contracts with the operators of the container vessels for the carriage of the Defendants' cargo, known as a "Master" bill of lading.

53. As the party that arranged the transportation of the cargo with the actual ocean carrier, Savino is identified as the "shipper" and as the "consignee" on the Master Bill of Lading issued by the ocean carriers.

54. As the shipper and consignee under the ocean carrier's Master Bill of Lading, Savino is subject to the same post-discharge free time periods established by the ocean carriers and/or the terminals through which the containerized cargo passes.

55. As the shipper and consignee under the Master Bills of Lading, Savino is liable for charges that accrue as a result of Samsara and the Foreign Shippers failing to arrange for the delivery of containers within the free time allowed at the conclusion of the carriage.

56. Samsara failed to arrange for the payment of charges due on containers that were delivered.

57. Samsara failed to accept delivery of eleven (11) containers which resulted in the accrual of daily charges.

58. In addition to the charges that were owed to the ocean carriers, the containers also accrued daily charges for taking space in the yards and terminals where the non-delivered containers waited to be delivered to Samsara.

59. As the "shipper" and/or consignee on the bill of lading issued by the ocean carriers and the contracting party with the other participants in the transportation, such as, land carriers and terminals, Savino is responsible for the payment of all charges due and owing to the on each of the container for which Savino arranged transportation.

60. As a NVOCC, Savino passed-on the charges assessed by the ocean carriers, land carriers and terminals that were involved in the movement of the containers to Samsara, as the consignee.

*Savino as Customs Broker*

61. Samsara executed a "Customs Power of Attorney" authorizing Savino to act as Samsara's Customs Broker. (Annexed hereto **as Exhibit E** is a copy of the executed Power of Attorney)

62. As Samsara's Customs Broker, Savino arranged for the filing of entries pertaining to Samsara's cargo being imported into the United States and for payment of customs duties, allowing entry of the cargo inside the containers through U.S. Customs and Border Protection.

63. In furtherance of performing its Customs Brokering duties, Savino was required to make payment of customs duties and to make payment of charges on behalf of Samsara to U.S. Customs.

64. In furtherance of performing its Customs Brokering duties, Savino charged Samsara for the Customs related services.

65. Savino acted as Samsara's Customs Broker and effected the payment of duties and charges assessed against all of the shipments that are involved with this legal action, including the cargo that was delivered to Samsara and for the cargo that was not delivered.

66. Savino invoiced Samsara for the charges incurred in connection with performing its Customs Brokering duties.

67. Despite due demand made by Savino, Samsara has refused to make payment of any of the invoiced  outstanding charges that are due and owing by Samsara.

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF
## CONTRACT OF CARRIAGE AS TO CARGO DELIVERED TO SAMSARA

68. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 67 with the same force and effect as if set forth at length herein.

69. Plaintiff, Savino, entered into bill of lading contracts with Samsara and/or with "Sunderlands a Samsara Surfaces Entity" pursuant to which Savino agreed to arrange for the transport of loaded and sealed shipping containers from a foreign port of loading or place of receipt to the place of delivery, located in the United States of America for an agreed amount.

70. Savino successfully arranged for the transportation and made the containers available for receipt by Samsara, in fulfilment of the maritime contracts of carriage represented by each of the Savino House Bills of Lading.

71. Samsara received delivery of said containers, devanned (unloaded) the cargo from the containers and arranged for the return of the empty containers.

72. Savino invoiced Samsara for the ocean freight and applicable charges that were due on each of the containers that were received by Samsara.

73. Annexed hereto as **Exhibit F** is a summary prepared by Savino memorializing the amounts due and owing by Samsara for each of the containers successfully transported and delivered to Samsara, for which unpaid balances remain, showing the original shipper, the Savino House Bill of Lading Number and the amount invoiced by Savino to Samsara and the amounts remaining due and owing to Savino by Samsara.

74. In breach of the maritime contracts entered into between Savino and Samsara, Samsara failed to make payment of the invoices that were issued and delivered to Samsara, by Savino, despite due demand by Savino.

75. Savino is owed the amount of $336,734.36 for services performed and invoiced by Savino in connection with the containers that had been successfully delivered to Samsara.

76. No  part of the amount due on the invoices rendered by Savino to Samsara for containers that were delivered to Samsara has been paid.

77. Savino has fulfilled all of its duties and obligations under the applicable bill of lading contracts.

**AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT OF CARRIAGE AS TO CARGO NOT DELIVERED TO SAMSARA**
*(SAMSARA and FOREIGN SHIPPERS )*

78. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 77 with the same force and affect as if set forth herein.

79. Savino entered into a number of bill of lading contracts with the Foreign Shippers, as named "shipper" and Samsara, as the named "consignee," pursuant to which the Foreign Shippers and Samsara agreed to make payment to Savino for the ocean freight and other charges incurred in connection with the carriage of eleven (11) shipper loaded and sealed containers from the port of loading or place of receipt to be delivered to Samsara at the port of discharge or place of delivery noted on each of the eleven (11) containers:

| HBL | Shipper name | Ctnr nr |
|---|---|---|
| SDB76M00181 | BADAN BUILDING MATERIALS CORPORATION | MSDU1084520 &  MEDU6538383 |
| SDB76M00182 | BADAN BUILDING MATERIALS CORPORATION | GLDU9479180 |
| SDBAGS077309 | GRAMAZINI GRANITOS E MARMORES THOMAZINI LTDA | CAIU2741771 |
| SDBAGS074403 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | MSCU2573203 |
| SDBAGS074402 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | DFSU2663710 |
| SDB57S017357 | GRANITOS S A | DRYU2501215 |
| SDBAGS076818 | MG2 MARMORES E GRANITOS LTDA | FCIU2367438 |
| SDBAGS074056 | MINERACAO MARIANELLI LTDA | MEDU1534430 |
| SDBAGS074057 | MINERACAO MARIANELLI LTDA | FCIU3594380 |
| SDBACS013024 | NISSI ROCHAS COM. E REP LTDA | MEDU6609424 |

80. Savino successfully effected the transportation of the above referenced eleven containers (hereinafter "Eleven Containers") and made them available for receipt by Samsara.

81. At the direction of Samsara, Savino made arrangements with U.S. Customs and Border Protection for the entry of the eleven containers into the United States, including the filing of entries for the cargo contained in the eleven containers and the payment of necessary duties on behalf of Samsara, as the importer of record for the cargo in the eleven containers.

82. Savino advised Samsara as to the applicable free time with regard to each of the eleven containers.

83. The Foreign Shippers were aware that there was free time applicable to each of the Eleven Containers and that charges would be accrued in the event that the Eleven Containers were not delivered within the allowed free time.

84. Samsara failed to accept delivery of the Eleven Containers within the free time period allowed in connection with each of the Eleven Containers.

85. As a result of Samsara's failure to accept delivery of the shipping containers at the place of delivery, as set-forth in the operable House Bill of Lading contracts, charges accrued in relation to each of the Eleven Containers in the nature of: storage; per diem charges; detention charges;

chassis storage; demurrage; surface transportation charges; customs charges; entry fees; chassis rental; drayage; mitigation charges - including the purchase of shipping containers to prevent the accrual of additional charges; expenses incurred in the sale and disposal of the cargo loaded into the Eleven Containers, disposition of the purchased Eleven Containers and other charges, for which Savino has demanded payment from Samsara.

86. Savino sent invoices to Samsara representing the charges due and owing by Samsara for Savino's arranging of the transportation and associated charges for each of the Eleven Containers.

87. Savino gave notice to each of the Foreign Shippers that the containers which they had shipped to Samsara had not been delivered to Samsara and that as a result, charges were accruing on the cargo.

88. In breach of the maritime contracts entered into between Savino, Samsara and the Foreign Shippers, Samsara and/or the Foreign Shippers failed to make payment of the amounts invoiced for the charges associated with the Eleven Containers.

89. Samsara, as the named consignee, the party that took steps to exercise control over the cargo and as the importer of record for the cargo in the Eleven Containers, is liable for the net amount due and owing in relation to the Eleven Containers.

90. Each of the Foreign Shippers, as the "shipper" named on each House Bill of Lading issued for its respective cargo, is liable for the net amount due and owing in relation to their respective containers.

## AS AND FOR A THIRD CAUSE OF ACTION
## EXERCISE OF MARITIME LIEN RIGHTS TO MITIGATE
## DAMAGES DUE ON THE UNDELIVERED ELEVEN CONTAINERS
### *(SAMSARA and FOREIGN SHIPPERS )*

91. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 90 with the same force and affect as if set forth herein.

92. Because the Eleven Containers remained undelivered after notice of arrival was given by Savino, additional charges continued to accrue on a daily basis on each of the Eleven Containers, after the expiration of free time.

93. Savino actively sought to mitigate the potential damages owed by Samsara and the Foreign Shippers for the accrued charges that were due and owing and increasing in relation to each of the Eleven Containers.

94. Savino gave notice to Samsara and to the Foreign Shippers of the amounts owed in relation to each of the Eleven Containers and that Savino intended to sell the cargo in each of the Eleven Containers, pursuant to the lien rights granted in the Savino House NVOCC Bill of Lading and the Credit Agreement, if the amounts owed for each of the Eleven Containers was not paid.

95. Neither Samsara nor any of the Foreign Suppliers agreed to pay the amounts due and owing on each of the Eleven Containers.

96. Savino was able to recover some money through sale of the cargo in the containers and subsequent sale of the empty containers, leaving a net amount paid by Savino and owed by Samsara as a result of Samsara's failure to accept delivery of the containers when required of $297,581.19.

97. Each of the Foreign Shippers is jointly and severally responsible for payment of the total charges due and owing on each of the Eleven Containers for which Savino arranged transportation:

| HBL | Shipper name | Ctnr nr | SDB Invoice amount | SOLD AMOUNT | SELLING COSTS INCURRED | NET AMOUNT TO RECOVER |
|---|---|---|---|---|---|---|
| SDB76M00181 | BADAN BUILDING MATERIALS CORPORATION | MSDU1084520 &  MEDU6538383 | $93,833.31 | $56,666.67 | $0.00 | $37,166.64 |
| SDB76M00182 | BADAN BUILDING MATERIALS CORPORATION | GLDU9479180 | $56,313.90 | $28,333.33 | $0.00 | $27,980.57 |
| SDBAGS077309 | GRAMAZNI GRANITOS E MARMORES THOMAZINI LTDA | CAIU2741771 | $13,507.07 | $15,000.00 | $3,645.63 | $2,152.70 |
| SDBAGS074403 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | MSCU2573203 | $52,644.54 | $15,000.00 | $3,645.63 | $41,290.17 |
| SDBAGS074402 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | DFSU2663710 | $50,997.73 | $15,000.00 | $3,645.63 | $39,643.36 |
| SDBSTS017357 | GRANITOS S A | DRYU2501215 | $37,064.00 | $15,000.00 | $3,645.63 | $25,709.63 |
| SDBAGS076818 | MG2 MARMORES E GRANITOS LTDA | FCIU2367438 | $16,109.46 | $15,000.00 | $3,645.63 | $4,755.09 |
| SDBAGS074056 | MINERACAO MARIANELLI LTDA | MEDU1534430 | $47,989.13 | $15,000.00 | $3,645.63 | $36,634.76 |
| SDBAGS074057 | MINERACAO MARIANELLI LTDA | FCIU3594380 | $53,607.03 | $15,000.00 | $3,645.63 | $42,252.66 |
| SDBACS013024 | NISSI ROCHAS COM. E REP LTDA | MEDU6609424 | $51,350.02 | $15,000.00 | $3,645.63 | $39,995.65 |
| | | | $473,416.19 | | | $297,581.19 |

98. Samsara, as the named consignee and the importer of the cargo in the Eleven Containers is jointly and severally liable for the full amount due and owing in relation to the Eleven Containers in the amount of $297,581.19.

99. Despite due demand, no part of the amount owed on each of the Eleven Containers has been paid by Samsara or the Foreign Shippers.

100.    Savino has fulfilled all of its duties and obligations under the applicable House Bill of Lading Contracts.

## AS AND FOR A FOURTH CAUSE OF ACTION
## SEEKING CONTRACTUAL SERVICE CHARGE
### (Against Samsara)

101.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 100 with the same force and effect as if set forth at length herein.

102.    Savino and Samsara entered into a Credit Application Agreement which provided that Savino would grant Samsara credit terms that allowed Samsara to pay invoices rendered by Savino to Samsara forty-five (45) days after the date of the invoice.

103.    The Credit Application provided that Savino could charge a pro-ratable service charge equal to one and one-half (1.5) % per month on all invoice balances not paid when due.

104.    Savino has rendered invoices for amounts due and owing on shipments which Samsara has accepted and on shipments for which Samsara has failed to accept delivery, despite notice of arrival.

105.     Samsara has failed to pay invoices in the amount of $634,615.55, when due, despite due demand by Savino.

106.     Pursuant to the Credit Application, Savino is entitled to recover a service charge of one and one-half (1.5) % of the amount of the invoices rendered by Savino to Samsara that were not paid when due.

107.     Savino has fulfilled all of its duties and obligations under the applicable House Bill of Lading Contracts and the Credit Application, entitling it to recover the allowed service charge.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR LEGAL FEES
### *(Against Samsara)*

108.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 107 with the same force and effect as if set forth at length herein.

109.     The Credit Application entered into between Savino and Samsara, provides that in the event that Savino should institute legal proceeding against Samsara to collect unpaid amounts invoiced to Samsara for services rendered, Savino shall be entitled to recover all collection expenses, including reasonable attorneys' fees and all costs incurred in such action.

110.     Savino has retained the undersigned law firm and the undersigned counsel to institute legal proceedings against Samsara to recover amounts due and owing from Samsara for which Savino had granted Samsara credit terms pursuant to the Credit Application.

111.     Savino has agreed to pay the undersigned law firm thirty percent (30%) of any amount recovered from Samsara in the present action and to pay all legal costs and expenses incurred in connection with the present lawsuit, seeking recovery of unpaid invoices and unpaid service charge from Samsara.

WHEREFORE, Plaintiff, SAVINO DEL BENE U.S.A., INC., prays:

a. That process in due form of law issue against the Defendant, SAMSARA SURFACES LLC, citing the said Defendant to appear and answer under oath all matters alleged in this Complaint;

b. That process in due form of law issue against the Foreign Shippers, MINERACAO MARIANELLI LTDA; MG2 MARMORES e GRANITOS; GRAMAZINI GRANITOS e MARMORES THOMAZINI LTDA; GRANITOS S/A; NISSI ROCHAS COM. E REP. LTDA; GRANIBRAS ES GRANITOS E MARMORES LTDS and BADAN BUILDING MATERIALS CORPORA634TION, citing each to appear and answer under oath all matters alleged in this Complaint;

c. That judgment be entered in favor of the Plaintiff, SAVINO DEL BENE U.S.A., INC., and against Defendant, SAMSARA SURFACES LLC., directing Defendant SAMSARA SURFACES LLC., to pay all sums of money owed by Samsara to Savino, in the amount of $634,615.55;

d. That judgment be entered in favor of the Plaintiff, SAVINO DEL BENE U.S.A., INC., and against each of the Foreign Shipper Defendants, MINERACAO MARIANELLI LTDA; MG2 MARMORES e GRANITOS; GRAMAZINI GRANITOS e MARMORES THOMAZINI LTDA; GRANITOS S/A; NISSI ROCHAS COM. E REP. LTDA; GRANIBRAS ES GRANITOS E MARMORES LTDS and BADAN BUILDING MATERIALS CORPORATION, directing each of the Foreign Shipper Defendants to pay the amounts owed to Plaintiff in the following net amounts:

| HBL | Shipper name | Ctnr nr | SDB Invoice amount | SOLD AMOUNT | SELLING COSTS INCURRED | NET AMOUNT TO RECOVER |
|---|---|---|---|---|---|---|
| SDB76M00181 | BADAN BUILDING MATERIALS CORPORATION | MSDU1084520 &  MEDU6538383 | $93,833.31 | $56,666.67 | $0.00 | $37,166.64 |
| SDB76M00182 | BADAN BUILDING MATERIALS CORPORATION | GLDU8479180 | $56,313.90 | $28,333.33 | $0.00 | $27,980.57 |
| SDBAGS077309 | GRAMAZINI GRANITOS E MARMORES THOMAZINI LTDA | CAIU2741771 | $13,507.07 | $15,000.00 | $3,645.63 | $2,152.70 |
| SDBAGS074403 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | MSCU2573203 | $52,644.54 | $15,000.00 | $3,645.63 | $41,290.17 |
| SDBAGS074402 | GRANIBRAS.ES-GRANITOS BRASILEIROS LTDA | DFSU2663710 | $50,997.73 | $15,000.00 | $3,645.63 | $39,643.36 |
| SDB57S017357 | GRANITOS S A | DRYU2501215 | $37,064.00 | $15,000.00 | $3,645.63 | $25,709.63 |
| SDBAGS076818 | MG2 MARMORES E GRANITOS LTDA | FCIU2367438 | $16,109.46 | $15,000.00 | $3,645.63 | $4,755.09 |
| SDBAGS074056 | MINERACAO MARIANELLI LTDA | MEDU1534430 | $47,989.13 | $15,000.00 | $3,645.63 | $36,634.76 |
| SDBAGS074057 | MINERACAO MARIANELLI LTDA | FCIU3594380 | $53,607.03 | $15,000.00 | $3,645.63 | $42,252.66 |
| SDBACS013024 | NISSI ROCHAS COM. E REP LTDA | MEDU6609424 | $51,350.02 | $15,000.00 | $3,645.63 | $39,995.65 |
| | | | $473,416.19 | | | $297,581.19 |

e.  That in accordance with the governing Credit Agreement contract, this Court award a contractual service charge  of 1.5% per month on all amounts due and owing by SAMSARA SURFACES LLC.,  to SAVINO DEL BENE U.S.A., INC.;

f.  That in accordance with the governing Credit Agreement contract, this Court award reasonable legal fees in the amount equal to 30% percent of any recovery together with legal costs and expenses in addition to the amount due and owing to SAVINO DEL BENE U.S.A., INC. by SAMSARA SURFACES LLC.;

g.  That this Court grant such further, different and other relief as the Court deems just and appropriate.

Dated: New York, New York
        January 23, 2023

KENNEDYS CMK LLP.
*Attorneys for Plaintiff*
SAVINO DEL BENE U.S.A., INC.

By: ___/s/____JOHN A. ORZEL_____
        JOHN A. ORZEL
        (Admitted only in New York)
        120 Mountain View Boulevard
        Basking Ridge, New Jersey 07920
        Phone: (908) 605-2916
        John.orzel@kennedyslaw.com

25